**BLANK ROME LLP**
Dennis M.P. Ehling (SBN 168892)
Ehling@BlankRome.com
Benjamin G. Stonelake (admitted *pro hac vice*)
Stonelake@BlankRome.com
Shawnda M. Grady (SBN269080)
SGrady@BlankRome.com
Elizabeth B. Kim (SBN 252408)
EKim@BlankRome.com
2029 Century Park East, Suite 600
Los Angeles, CA  90067
Telephone:   424-239-3400
Facsimile:    424-239-3434

Attorneys for Defendants
**PCC TECHNICAL INDUSTRIES, INC.** and
**GK TECHNOLOGIES, INC.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY OF LOS ANGELES<br><br>                    Plaintiff,<br>v.<br>PCC TECHNICAL INDUSTRIES, INC., *et al.*<br><br>                    Defendants. | Case No. CV 11-01626 FMO (CWx)<br><br>Assigned to Hon. Fernando M. Olguin<br><br>**PCC TECHNICAL INDUSTRIES, INC.'S AND GK TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER BIFURCATING TRIAL AND IN SUPPORT OF SANCTIONS AGAINST HACLA**<br><br>[*Filed concurrently with Declarations of Dennis M.P. Ehling and Shawnda M. Grady*]<br><br>Courtroom: 22<br><br>Complaint filed: February 24, 2011<br>Trial Date: February 24, 2015 |

**PCC'S AND GK TECH'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

PCC Technical Industries, Inc. ("PCC") and GK Technologies, Inc. ("GK Tech") do not oppose bifurcation of this matter, generally. However, should the Court bifurcate trial, because there are common issues of fact between those claims asserted by plaintiff Housing Authority of the City of Los Angeles ("HACLA") under CERCLA and state law for trespass and nuisance, those issues to which the defendants have a right to a jury trial must be heard *first*, and any findings by the Court cannot be imposed on the jury in addressing those issues. Additionally, the issue of whether or not any alleged liabilities were "known" by GK Tech at the time that it recorded the Certificate of Dissolution for Southwest Steel Rolling Mills, Inc. ("Southwest II") is a question of fact that must first be determined by a jury; it is not a matter of law to be resolved by the Court.

Furthermore, any opposition to this *ex parte* application could have been avoided (or substantially minimized) if HACLA's counsel had complied with its obligation under the Local Rules and directives of this Court to meet and confer in good faith before filing. Although HACLA's counsel advised defense counsel of its intent to seek bifurcation, they refused to address the issues raised by counsel for PCC and GK Tech before filing this application (and misrepresented the issues raised by PCC and GK Tech's counsel in the declaration HACLA filed in support of this application). Rather than engaging in a meaningful dialogue to attempt to resolve the issues now before the Court, HACLA's counsel simply filed moving papers that are far different from those they initially presented to defense counsel forcing PCC and GK Tech to incur costs and fees that otherwise could have been avoided.

## II. FACTS

### A. Issues for Trial

The remaining causes of action under HACLA's Fifth Amended Complaint ("FAC") against most of the defendants are: (i) cost recovery under the CERCLA;

(ii) contribution and or indemnity under the California Hazardous Substance Account Act ("HSAA"); (iii) private nuisance; (iv) trespass; (v) negligence; and (vi) declaratory relief.  Docket No. 360.  Although not clearly identified in the FAC, HACLA now contends that GK Tech expressly assumed responsibility for any and all future liabilities of Southwest II, including its alleged release of hazardous substances on the Site, when it dissolved Southwest II in 1993 and filed a Certificate of Dissolution with the California Secretary of State, which provided, in relevant part:

> that adequate provision for the payment of unpaid debts and liabilities has been made in that GK TECHNOLOGIES, INCORPORATED, a corporation, organized under the laws of New Jersey, has assumed payment of all **known** debts and liabilities of SOUTHWEST STEEL ROLLING MILLS, INC.

(Emphasis added.)[1]

On November 20, 2014, HACLA filed a Motion for Summary Judgment addressing certain elements of its CERCLA claim.  Docket No. 615.  On January 26, 2015, the Court granted HACLA's motion, making certain findings relating to HACLA's claims under CERCLA. Docket No. 748 at 22:26-23.5.  A jury trial is scheduled to proceed on February 24, 2015.  *See* Docket No. 634, ¶ 12.

B.     HACLA's Notice of this Application

On January 27, 2015, Walter J. Lipsman, counsel for HACLA, sent an email to defense counsel requesting they participate in a conference call the following day to "meet and confer to discuss HACLA's proposal to bifurcate HACLA's CERCLA claims," which he proposed should "be tried first."  Ehling Decl. at **Ex. A**.  In that email, Mr. Lipsman further explained that he believed "the Court's January 26, 2015 Order Re: HACLA's Motion for Summary Judgment …. resolve[s] many of the factual issues common to all of HACLA's claims." *Id*.

On January 28, 2015, counsel for the parties participated in a conference call in

---

[1]     HACLA also asserts that PCC contractually assumed liabilities for the pre-1969 Southwest Steel Rolling Mills ("Southwest I").

2

**PCC'S AND GK TECH'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

1  which Mr. Lipsman advised that he intended to file an *ex parte* application to bifurcate
2  the trial.  Grady Decl. at ¶ 2.  Mr. Lipsman asserted the matter should proceed first
3  with a bench trial to address the remaining issues necessary to resolve the CERCLA
4  claims and the alleged assumptions of liability by PCC and GK Tech. *Id*. at ¶ 3.  He
5  asserted that if the parties proceeded to a jury trial after the bench trial, all findings of
6  fact in the Order granting HACLA's motion for summary judgment and the Court's
7  findings in the bench trial would carry over to the jury trial on the state law claims,
8  noting specifically the parties' involvement at Site and sources of contamination.  *Id*.
9  Mr. Lipsman advised that he would circulate the proposed application and asked
10 defense counsel if they would oppose.  *Id*.  Counsel for PCC and GK Tech responded
11 that she would have to first review the proposed application.  *Id*. at ¶ 4.

12        On Friday, January 30, 2015, at 2:21 p.m., HACLA's counsel sent an email to
13 defense counsel stating:  "attached [is an] *ex parte* application that we intend to file on
14 Monday, February 2, 2015," and asking counsel to advise whether they would oppose.
15 Ehling Decl., **Ex. B**.  The attached application proposed that HACLA should <u>first</u> try
16 to the judge the CERCLA and HSAA claims, in their totality,  the "meaning of New
17 Southwest's 1993 Certificate of Dissolution," and the "meaning of the Agreement of
18 Purchase between [Southwest I] and Automation Industries, Inc. [now PCC],"
19 followed by a bench trial to address HACLA's claims for trespass and nuisance.  *Id*. at
20 pp. 1-2.  The supporting brief was only eight pages long.  *Id*.

21        Two hours after receiving HACLA's *ex parte* papers, Dennis M.P. Ehling,
22 counsel for PCC and GK Tech, sent an email to HACLA's counsel stating:

> 1)    The findings of fact necessary for liability on the state law claims (nuisance and trespass) are not the same as the findings of fact to support PRP status; so the PRP ruling does not vitiate the need for the jury to determine the additional facts required to find liability for nuisance/trespass;
>
> 2)    Where there are findings of fact required for a claim subject to a jury right, the judge CANNOT first make factual rulings on related non-jury claims based on the same facts so as to prejudice the right to jury on the jury-trial claims.  *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *Allison v. Citgo Petroleum Corp*., 151 F.3d

3
PCC'S AND GK TECH'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION

402, 423 (5th Cir. 1998); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552 (1990).

In light of these considerations, I am not inclined to stipulate, but I am still in discussions with my client. In any event, I am not inclined to stipulate that the Court can determine the question of whether the liabilities here were "known liabilities" at the time of GK Tech's dissolution – an which the judge already determined was a question of fact, regardless of the interpretation of the contract.

Happy to discuss further.

Ehling Decl., **Ex. C**. Counsel for HACLA did not respond by phone or email to Mr. Ehling's email. Ehling Decl., ¶ 5.

On Tuesday, February 3, 2015, at approximately 4:30 p.m., HACLA filed the instant *ex parte* application, addressing (for the first time) – and attempting to distinguish – the case law cited by Mr. Ehling in his January 30 email. *Cf.* Ehling Decl. **Exs. C and D** with Pl. Br. at 6-7 and fn. 4. The current application also substantially changes the nature of the bifurcation being sought: now HACLA seeks a bifurcation of certain elements of the CERCLA and HACLA claims, while leaving others to the jury – again, though, after the Court has already made binding findings of fact as to those elements to be tried in Phase I.

At 5:08 p.m., Mr. Ehling sent an email to HACLA's counsel advising that the application filed differed substantially from the application circulated the week before and that it detailed new legal arguments – apparently in response to the issues Mr. Ehling raised by email, rather than having addressed those issues with Mr. Ehling directly – but still sought relief that was inappropriate. Ehling Decl., **Ex. E**. Mr. Ehling asked HACLA's counsel to withdraw this *ex parte* application and to engage in a further "meet and confer" conference:

> to discuss how you think this new proposal could work, including in particular:
>
> 1.      What factual issues regarding "damages" you propose to send to the jury and what you propose that the judge pre-determine before the evidence is presented to the jury (how, for example, do you envision that the court would determine that HACLA's response costs are "necessary" without determining what those costs are, which would seem to be one of the factual issues committed to the jury?

4
**PCC'S AND GK TECH'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**

> What part of "necessary" will the court decide without impinging on the jury's purview to decide what damages are reasonable?, and
>
> 2.   If the court is to decide "the meaning of the terms of the certificate of dissolution of Southwest Steel Rolling Mills, Inc.," what do you propose to do with the questions of fact that the court found existed in ruling on GK Tech's MSJ as to whether the liabilities at issue here were "known" in 1993? Will those questions be committed to the jury? If not, on what basis would the court have authority to decide those factual questions?

*Id*. Mr. Ehling further advised HACLA's counsel that if he did "not receive a satisfactory response," he would "ask the Court to sanction Plaintiff for filing an ex parte application without properly 'meeting and conferring' with the Defendants on the relief sought." *Id*. HACLA's counsel did not respond to Mr. Ehling's request to withdraw the application in order to meet and confer. *Id*. at ¶ 8.

III.   ARGUMENT

    A.   The Meaning of What was Known by GK Tech at the Time of the Dissolution is a Question of Fact to be First Decided by the Jury

Interpreting the meaning of the terms in the Certificate of Dissolution – and importantly the factual question of what liabilities were "known" at that time of the dissolution of Southwest II – are unequivocally questions of fact for the jury. Indeed, this Court has already ruled that "there are ***numerous material questions of fact*** as to GK Tech's knowledge that environmental contamination was a liability of Southwest II." *See* Docket No. 668 at 6:19-6:20 (emphasis added). Such issues are for the jury to decide. *See e.g., Beacon Theatres*, 359 U.S. at 510-11, fn. 18; *U.S. v. $311,229.00 In US Currency*, 585 Fed. Appx. 549 (9th Cir. 2014).

The Ninth Circuit and the Supreme Court of California have further made clear that when, as here, the intent of the parties must be ascertained at the time the contract at issue was executed, the interpretation of the contract is a question of fact ***for the jury*** to decide. In *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375 (2008), the jury found the defendant liable for, among other things, breaching a contract with the plaintiff. On appeal, defendant contended generally that the interpretation of the contract is a question of law that should be decided by the trial

court, not the jury. The Supreme Court of California disagreed. The Court held:

> Juries are not prohibited from interpreting contracts. Interpretation of a written instrument becomes solely a judicial function only when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence. But when, as here, ***ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence***, *that credibility determination and the interpretation of the contract are questions of fact that may properly be resolved by the jury*.

*Id*. at 396 (emphasis added). *See also Warner Constr. Corp. v. L.A.*, 2 Cal. 3d 285, 291 (1970) ("since the interpretation of the crucial provisions turned on the credibility of expert testimony, the court did not err in submitting the construction of the contract to the jury").

This rule—that the jury should interpret an agreement when construction turns on the credibility of extrinsic evidence—is followed by the Ninth Circuit and the Central District of California. *See, e.g., Willig v. Exiqon, Inc.*, 2012 U.S. Dist. LEXIS 662 (C.D. Cal. Jan. 3, 2012) (finding that a questions of "the intent of the parties at the time the contract was executed [that] depends on the credibility of extrinsic evidence…are questions of fact" that "go to the jury"); *Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066, 1077 (9th Cir. 2010); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). The rule is also well established under California case law. *See e.g.*, *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.*, 4 Cal. App. 4th 1538, 1562 (1992). California's jury instructions also reflect this rule. *See, e.g.,* Judicial Council of Cal. Civ. Jury Instructions 1-300 CACI 314 (Interpretation—Disputed Words); 1-300 CACI 317 (Interpretation—Construction of Contract as a Whole); 1-300 CACI 318 (Interpretation—Construction by Conduct). As do authoritative secondary sources. *See* Restatement 2d of Contracts, § 212(2) ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or

on a choice among reasonable inferences to be drawn from extrinsic evidence.").

Despite this binding and persuasive precedent, HACLA seeks to have this Court decided "the meaning of the terms of the certificate of dissolution," overlooking the numerous relevant material factual issues in dispute related to the Certificate's interpretation. The interpretation of the terms of the Certificate does *not* involve the words of the Certificate alone.

To determine the intent of the parties and the related factual issue of what liabilities were "known" at the time GK Tech executed the Certificate of Dissolution, the jury must address a substantial amount of extrinsic evidence. Indeed, this Court identified numerous issues of fact that must be resolved related to the interpretation of the Certificate of Dissolution, including, but not limited to: the physical state of the Site at the time, what GK Tech's directors and officers were aware of at the time, whether GK Tech's parent company contemplated environmental liability in other matters prior to the filing of the Certificate of Dissolution. *See* Docket No. 668 at 6:19-8:21. This Court further explained "there are disputed issues of fact as to whether GK Tech had knowledge that Southwest II's activities at the Site during its period of ownership resulted in environmental contamination." *Id*. at 9:21-9:24. GK Tech maintains that it assumed only Southwest II's "known" liabilities, which did not include any potential CERCLA liability.

Such disputed issues of fact as to what was "known" by GK Tech at the time of the dissolution of Southwest II clearly raise, among other things, credibility issues that must be addressed by the jury. *See Cachil Dehe Band of Wintun Indians*, 618 F.3d at 1077; *Mattel, Inc.*, 616 F.3d at 913; *City of Hope National Medical Center*, 43 Cal. 4th at 396; *Warner Constr. Corp.*, 2 Cal. 3d at 291.

   B.   The Bifurcation of the CERCLA and HSAA Claims From the Common Law Claims, as Proposed By HACLA, Is Still Improper

As HACLA itself acknowledges, where there is an overlap in the findings of fact at issue in claims that are to be heard by the court and claims subject to a jury right, the court *cannot first* address the matter, because it would impose on the right to

a jury trial on the other issues. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552 (1990). Here there is overlap between the factual findings required to resolve HACLA's CERCLA and state law claims. In addition to any liability by GK Tech, possession or control of the Site, disposal of waste on the Site, the extent to which such disposals *caused* the need for the remediation HACLA intends to undertake, and the alleged damages are all questions that a jury must <u>*first*</u> address.

HACLA's proposed reservation of "damages" issues to the jury is unavailing when HACLA would have the Court first determine the items of work that are "necessary" (presumably including the amount of excavation that is "necessary" as well, leaving only for the jury to calculate the cost of that work), and who is responsible for what portion of those damages (again, an issue clearly committed to the jury on the state law claims). Such factual questions must <u>*first*</u> be decided by the jury before any findings by the Court can be made on these overlapping factual issues; the Court cannot make prior findings on any of these issues such as would risk imposing such findings on the jury. *See id.* If bifurcation is to proceed, the case law is clear that the overlapping issues to be tried by the jury should proceed *first*, before the issues to be tried to the Court.[2] HACLA's attempt to distinguish the case law cited by PCC and GK Tech is misguided, and HACLA fails to offer any case law in its moving papers that directs otherwise.

---

[2] During the "meet and confer" process, it was suggested that, if HACLA's recovery on the CERCLA and HSAA claims was sufficient, HACLA could just dismiss its state law claims at that time. Clearly established U.S. Supreme Court precedent does not allow HACLA to maintain that option. If, in light of the Court;s findings in its January 26, 2015 Order, HACLA determines that it does not need to proceed with its state law claims, the time to dismiss those claims and avoid "wasted" time of a jury is now, before trial commences.

### C. HACLA'S *Ex Parte* Application Is Improper and Warrants Sanctions

Local Rule 7-3 provides that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion ***and any potential resolution***." (Emphasis added.) The Civility and Professionalism Guidelines of this Court further require that: "[b]efore filing a motion with the court, [counsel] will engage in ***more than a mere pro forma discussion*** of its purpose ***in an effort to resolve the issue*** with opposing counsel." (Emphasis added). In other words, motions are to be filed only after counsel for the parties determine that they are unable to reach a resolution after a ***true effort*** has been made to do so.

Pursuant to Local Rule 83-7, the Court may issue sanctions against a party that fails to follow any of this Court's Local Rules, and may do so in the form of monetary sanctions (for willful conduct), costs and attorneys' fees to opposing counsel (for bad faith conduct), or any other sanctions as the Court may deem appropriate.

Here, HACLA's counsel refused to actually engage in discussion regarding the objections raised by PCC and GK Tech's counsel, causing PCC and GK Tech to incur attorneys' fees in responding to this motion that could have been completely, or at least largely, avoided. Had HACLA's counsel simply responded to Mr. Ehling's email – which invited further discussion on the issues he raised – HACLA's counsel would have apparently better understood the issue that Mr. Ehling was raising (HACLA appears to have interpreted Mr. Ehling's email to have related only to the findings on damages (*see* Pl. Br. at 6-7 and fn. 4). Mr. Ehling raised the issues, however, relating to: (i) the issue of GK Tech's alleged assumption of liability, which GK Tech asserts is an issue of fact to be determined by a jury, and (ii) in response to the assertions by HACLA's counsel that findings made by the court in relation to the CERCLA claim – including possession or ownership of the Site and any discharges there – would be resolved with respect to the state law claims and imposed on the jury. As addressed above, such a conclusion is improper.

Rather than addressing the issue with counsel before bringing this application, HACLA's counsel *misrepresented to this Court* that "Mr. Ehling advised that he believes that bifurcation is unconstitutional" (McKim Declaration at ¶ 8) and revised its application to respond to the arguments that they believed Mr. Ehling to have made in its supporting Memorandum of Law (Pl. Br. at 6-7 and fn.4).  After HACLA filed this application, Mr. Ehling again sought to engage in an actual dialogue to attempt to resolve the issue – asking HACLA's counsel to withdraw the application in order to discuss the issues he raised and the issues raised in the application HACLA filed that differed from the one that it had served on defense counsel – but HACLA's counsel refused.  *See* Ehling Decl. **Ex. E**.  This is exactly what this Court's meet and confer obligation is intended to avoid.

As a result of defending this motion, PCC and GK Tech have incurred attorneys' fees in the amount of $6,435.00, for which they should be compensated.

## III.  CONCLUSION

For the reasons set forth above, PCC and GK Tech respectfully request that this Court issue an Order:  (i) denying HACLA'S *Ex Parte* Application to bifurcate trial, (ii) directing counsel for the parties to further meet and confer to attempt to resolve or at least narrow the issues (with any costs thereof to be borne by HACLA); and (iii) for an award of sanctions in the amount of $6,435.00 against HACLA to compensate PCC and GK Tech for the attorneys' fees they incurred in responding to this motion, or in any other form that this Court deems proper.

Dated:  February 4, 2015            Respectfully submitted,

**BLANK ROME LLP**

By:  /s/ Dennis M.P. Ehling
       Dennis M.P. Ehling

*Attorneys for Defendants PCC Technical Industries, Inc. and GK Technologies, Inc.*