BLANK ROME LLP
Dennis M.P. Ehling (SBN 168892)
Ehling@BlankRome.com
Benjamin G. Stonelake (admitted *pro hac vice*)
Stonelake@BlankRome.com
Shawnda M. Grady (SBN 289060)
SGrady@BlankRome.com
Elizabeth B. Kim (SBN 252408)
EKim@BlankRome.com
2029 Century Park East, Suite 600
Los Angeles, CA  90067
Telephone:  424-239-3400
Facsimile:   424-239-3434

Attorneys for Defendants,
PCC TECHNICAL INDUSTRIES,
INC. and GK TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY OF LOS ANGELES<br><br>　　　　　　Plaintiff.<br><br>　vs.<br><br>PCC TECHNICAL INDUSTRIES, INC., a Delaware Corporation et al.<br><br>　　　　　　Defendants.<br><br>AND ALL RELATED ACTIONS | **CASE NO. 2:11-cv-01626 FMO (CWx)**<br><br>Assigned to Hon. Fernando M. Olguin<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF RE: BIFURCATION**<br><br>Trial Date: May 19, 2015 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1
II. CLAIMS AT ISSUE ....................................................................................... 1
    A. CERCLA/HSAA Claims: ..................................................................... 1
    B. Nuisance & Trespass Claims: ............................................................... 2
    C. Assumption Issues: ............................................................................... 2
    D. All Claims: ............................................................................................ 2
III. FACTUAL CIRCUMSTANCES .................................................................... 3
IV. OVERLAPPING ISSUES ............................................................................... 4
    A. Equitable Allocation and Total Recoverable Response Costs Overlap in HACLA's CERCLA and HSAA Claims ............................ 4
    B. Liability and Allocation Overlap with Total Claimed Damages in HACLA's State Law Claims ............................................................ 8
    C. Evidence Relating to Assumption Claims Also Overlaps with Evidence Relevant to Allocation Issues ............................................. 10
V. ISSUES AFFECTED BY FACTS STILL BEING DEVELOPED .............. 11
    A. Facts Still Being Developed ............................................................... 11
    B. The Developing Facts Have a Direct Impact on Liability Issues ....... 13
VI. CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AmeriPride Servs., Inc. v. Texas Eastern Overseas, Inc.*,
  782 F.3d 474 (9th Cir. 2015) ................................................................................5, 7

*Amoco Oil Co. v. Borden, Inc.*,
  889 F.2d 664 (5th Cir. 1989) ...................................................................................5

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*,
  39 Cal.3d 862 (1985) ...............................................................................................9

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
  270 F.3d 863 (9th Cir. 2001) ................................................................................5, 7

*Castaic Lake Water Agency v. Whittaker Corp.*,
  2002 WL 34700741 (C.D. Cal. 2002) ....................................................................12

*City of Wichita v. Trs. of Apco Oil Corp. Liquidating Trust*,
  306 F. Supp. 2d 1040 (D. Kan. 2003) .....................................................................6

*Envtl. Trasp. Sys., Inc. v. ENSCO, Inc.*,
  969 F.2d 503 (7th Cir. 1992) ...................................................................................6

*Farmland Indus. v. Colorado & E. R.R.*,
  944 F. Supp. 1492 (D.Colo. 1996) ..........................................................................7

*G.J. Leasing Co. v. Union Elec. Co.*,
  54 F.3d 379 (7th Cir. 1995) .....................................................................................8

*Kaiser Aluminum & Chemical Corp. v. Catellus Dev. Corp.*,
  976 F.2d 1338 (9th Cir. 1992) .................................................................................8

*Lockheed Martin Corp. v. U.S.*,
  35 F. Supp.3d 92 (D.D.C. 2014) .............................................................................6

*Mangini v Aerojet-General Corp.*,
  12 Cal. 4th 1087 (1996) ...........................................................................................8

*McCoy v. Gustafson*,
  180 Cal. App. 4th 56 (2009) .................................................................................8, 9

*Oildale Mutual Water Co. v. Crop Prod. Servs.*,
  2014 WL 824958 (E.D.Ca. 2014) ............................................................................9

*Perez v. First American Title Insurance Company*,
  910 F. Supp. 2d 986 (D. Ariz. 2011) .....................................................................14

*Starrh & Starrh Cotton Growers v. Aera Energy LLC*,
 15 Cal. App. 4th 583 (2007) .................................................................................9

*United States v. Alcan Aluminum Corp.*,
 990 F.2d 711 (2d Cir. 1993)..................................................................................5

*Yankee Gas Servs. v. UGI Utils., Inc.*,
 852 F. Supp. 2d 229 (D. Conn. 2012) ...................................................................6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
 259 F.3d 1101 (9th Cir. 2001) ............................................................................12

**STATUTES**

42 U.S.C. § 9607(a) .....................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(e) ..................................................................................................12

Fed. R. Civ. P. 34 ......................................................................................................13

## I. INTRODUCTION

This Court's October 13, 2015 Order re *Ex Parte* Application (Dkt. 850) directed the parties to attend the pre-trial conference on October 30, 2015 "prepared to discuss bifurcating liability and damages phases of trial as well as which issues should be tried to a jury and which should proceed at a bench trial." In the [Proposed] First Amended Pretrial Conference Order, the parties have outlined their respective positions on which issues should be tried to the jury and which should proceed to a bench trial. To assist the Court in addressing the question of whether the claims in this matter are amenable to bifurcation between a liability phase and a damages phase, Defendants GK Technologies, Inc. ("GK Tech"), PCC Technical Industries, Inc. ("PCC Tech"), Southwest Steel Rolling Mills, Inc. ("New Southwest"), Lester Ruben Corporation No. 1, Lester Ruben Corporation No. 2, Lester Ruben Corporation No. 3, Finkelstein Foundation, Estate of Lester M. Finkelstein, Deceased, Estate of Ruben Finkelstein, Deceased, and Southwest Steel Rolling Mills ("Old Southwest" and collectively, the "Defendants") submit this Joint Supplemental Brief re Bifurcation Issues. For the reasons set forth below, the Defendants believe that it would be impractical and ineffective to bifurcate liability and damages phases of trial for this matter.

## II. CLAIMS AT ISSUE

Following the Court's January 26, 2015 Order re HACLA's Motion for Summary Judgment (Dkt. 748), October 2, 2015 Order re Assumption of Liabilities Claims (Dkt. 848), and October 13, 2015 Order re Trespass and Nuisance Claims (Dkt. 849), the issues that remain to be tried in this case are as follows:

    **A.    CERCLA/HSAA Claims:**

        1.    Whether or to what extent the costs which HACLA seeks to recover from Defendants are "necessary" to respond to the release or threatened release of hazardous substances by Defendants at the Site.

      2.      Whether the costs which HACLA seeks to recover from the Defendants are consistent with the NCP.

      3.      Whether each of the defendants with which HACLA has reached a prior settlement (the "Settling Defendants")[1] is within one of the four classes of persons subject to the liability provisions of 42 U.S.C. section 9607(a).[2]

**B.    Nuisance & Trespass Claims:**

      4.      Whether the seriousness of the harm suffered by HACLA outweighs the social utility of Defendants' conduct.

      5.      Whether the harm that HACLA claims amounts to a continuing trespass and/or continuing nuisance (i.e., whether the contamination is capable of being abated at a reasonable cost and by reasonable means).

      6.      Whether Defendants are presently liable for the costs incurred by HACLA to remediate the Site.

      7.      Whether the harm that HACLA claims occurred more than three (3) years before the February 2011 filing of the Complaint in this action.

**C.    Assumption Issues:**

      8.      Whether GK Tech assumed liability for any contamination at the Site caused by activities of New Southwest Steel prior to 1979 as a "known liability" of New Southwest Steel in 1993.

      9.      Whether PCC Tech assumed liability for any contamination at the Site caused by the activities of the Old Southwest Steel prior to July 1969.

**D.    All Claims:**

      10.      The total amount of response costs/damages that HACLA is entitled to recover in this matter under any theory.

      11.      Whether HACLA was negligent [in purchasing the Site without conducting adequate due diligence in light of known environmental conditions of concern].

      12.      Whether HACLA's negligence was a substantial factor in causing its harm.

      13.      Whether the acts of others, including adjacent property owners and operators, and those owners and operators who followed the Defendants at the Site—including but not limited to the

---

[1] For these purposes, Settling Defendants include former third-party and fourth-party Defendants and Cross-Defendants who have paid to settle claims asserted against them in this action and/or have sought good faith determinations of their settlements from the court.

[2] The Court has already determined that HACLA is within one of the four classes of persons subject to the liability provisions of 42 U.S.C. § 9607(a) (see Dkt. 173).

-2-

**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

Plaintiff, the Settling Defendants, and the parties who graded the site, spreading and mixing any contaminated soil from isolated portions of the Site to across the entire Site, those who imported contaminated fill to the Site, and those who applied road oil and other substances to the soils at the Site—were superseding cause(s) of Plaintiff's claimed damages.

14. Whether Plaintiff's claimed harm to its property could have been avoided by reasonable efforts or expenditures.

15. The equitable allocation of recoverable response costs, if any, among HACLA, the Settling Defendants, adjacent landowners and/or operators, and the Defendants.[3]

As will be explained more fully below, most, if not all, of the remaining issues to be tried are interdependent and cannot be meaningfully tried in a bifurcated manner. Moreover, the resolution of each of HACLA's claims is going to be directly impacted by evidence of facts still being developed in the field (i.e., at the Site) as of the date of this Supplemental Brief, making bifurcation a practical impossibility at this time as well.

## III.  FACTUAL CIRCUMSTANCES

The Interim Remedial Action Plan ("IRAP") for the Site identified five primary contaminants of concern at the Site: lead, arsenic, TPH, PCBs and naphthalene. Since April 2015, HACLA's contractors have been working at the Site to implement the IRAP, which included excavation and disposal of soils in discrete areas of the Site specified in the IRAP. (Decl. of John Bollier in Support of Supp. Br. ¶¶ 5-7.) Prior to April 2015, all of that sampling data relied upon by HACLA's contractors at the Site, *and the various experts in this case*, showed no elevated concentration of contaminants outside of those discrete areas specified in the IRAP. (*See id.* at ¶¶ 5-7, 12, 17.)

Since April 2015, HACLA's contractors implementing the IRAP at the Site have reportedly spent approximately $13 million implementing the IRAP and concluded, based upon 126 "pothole" samples from outside the discrete areas

---

[3] Issues 11, 12, 13 and 14 all go to affirmative defenses pled by the Defendants as well as to the equitable allocation of recoverable response costs, if any, among HACLA, the Settling Defendants and the Defendants.

-3-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

identified for remediation in the IRAP, that soil contamination is far more widespread than anyone had previously concluded.  (*See* Dkt. 857 § 13.b.2; Dkt. 847-2 [Decl. of Walter J. Lipsman].)  All of this "new data" has been developed since the close of discovery on January 15, 2015.  Very little of this "new data" has yet been provided to the Defendants.  (*See* Decl. of Dennis M. P. Ehling ¶¶ 4-5.)

The Court found that all of the Defendants other than GK Tech are PRPs under CERCLA (and, therefore, the HSAA), and that such findings establish the majority of the elements necessary for HACLA's nuisance and trespass claims.  (*See* Dkts. Nos. 748, 849.)  Each of these orders make findings relating to the Defendants' responsibility for lead and arsenic contamination at the Site, but not as to any other contaminants of concern found on the Site.  (*Id*.)

## IV.   OVERLAPPING ISSUES

### A.   Equitable Allocation and Total Recoverable Response Costs Overlap in HACLA's CERCLA and HSAA Claims

The Court has already determined that each of the Defendants, other than GK Tech, is a potentially responsible person ("PRP") under CERCLA.  (*See* Dkt. 748).  Therefore, the remaining issues to be tried under HACLA's CERCLA and HSAA claims are:  (i) HACLA's total recoverable response costs; and (ii) the equitable allocation among HACLA, the Settling Defendants and the Defendants.  In its statement regarding bifurcation in the First Amended [Proposed] Final Pre-Trial Conference Order (Dkt. 857 § 13.b.ii), HACLA suggests that if the trial of this case were bifurcated between "liability" and damages (which HACLA does <u>not</u> prefer), issues regarding the equitable allocation of response costs could be tried as part of the "liability" phase, and questions regarding HACLA's total recoverable response costs could be tried as part of the "damages" phase.[4]  A number of courts to have faced this issue, though, have treated "liability" as

---

[4] HACLA stated in the First Amended [Proposed] Final Pre-Trial Conference Order (Dkt. 857 § 13.b.ii) its belief that trial should begin on <u>all</u> issues <u>after</u> completion of the remediation, to avoid the cost and uncertainty of two trials, but that liability and damages should be bifurcated if the current trial schedule is to be maintained.

distinctly separate from "allocation" and found that allocation and damages issues are more appropriate handled in the same phase, after the initial "liability" is established. *See*, *e.g.*, *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 667-68 (5th Cir. 1989) (noting that courts regularly bifurcate "*liability* and *remedial,* or *damages*, phases in CERCLA litigation," but "more complicated and technical questions of the appropriate cleanup measures and appropriate fault of liable parties" are better handled in the remedial phase); *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir. 1993).

As a practical matter, although "liability" and "damages" inquiries in a CERCLA case may be distinct, a clean line of demarcation between *allocation* and "damages" issues in this case is not possible.[5] HACLA's total recoverable response costs (i.e., its "damages") will be based, in large part, on the determination of the scope and total costs of the work undertaken by HACLA at the Site to remediate the contaminants of concern, and whether that work was "necessary" to respond to the presence of contaminants and undertaken consistent with the NCP. *See AmeriPride Servs., Inc. v. Texas Eastern Overseas, Inc.*, 782 F.3d 474, 489-90 (9th Cir. 2015); *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001). Of necessity, the determination of these issues will be dependent on HACLA's demonstration at trial of the extent of contamination at the Site, the measures undertaken by HACLA to remediate that contamination, and the costs of those measures. *Id*. The equitable allocation of those response costs among HACLA, the Settling Defendants, and the Defendants will be based upon a number of equitable factors, many of which will overlap with the evidence and factors addressing "necessity" and NCP compliance.

---

[5] To be clear, the Defendants do not contend that questions regarding *divisibility* – i.e. as a defense to CERCLA's general presumption of joint & several liability for PRPs – could never, in the right circumstances, be adjudicated in a separate phase of trial from the remedial or "damages" phase. But the questions of proper equitable *allocation* of costs at issue here are distinct from *divisibility*, and depend on factors of equitable apportionment of costs, not liability under CERCLA.

-5-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

In making a determination of equitable allocation, Courts typically look at the so-called Gore Factors and Torres Factors, including:

(1) The ability of each party to demonstrate that their contribution to the contamination on the Site can be distinguished;

(2) The amount of hazardous substances involved;

(3) The degree of toxicity of the hazardous substances involved;

(4) The degree of each party's involvement in the manufacture, treatment, transport, or disposal of the hazardous substances;

(5) The degree of care exercised by each party with respect to the hazardous wastes concerned, taking into account the characteristics of such hazardous wastes;

(6) The degree of each party's cooperation with governmental agencies in preventing harm to public health or the environment from a release;

(7) The extent to which costs are related to waste for which each party is responsible;

(8) Each party's level of culpability;

(9) The degree to which each party benefitted from the disposal; and

(10) Ability to pay.

See, e.g., *Envtl. Trasp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 508 (7th Cir. 1992); *Lockheed Martin Corp. v. U.S.*, 35 F. Supp.3d 92, 123 (D.D.C. 2014). However, in determining allocation of response costs under CERCLA, courts often also consider additional equitable factors, including the economic benefits realized by a party as a result of remediation efforts. "Thus, parties that benefitted financially from remediation are often allocated a larger portion of the response costs." *City of Wichita v. Trs. of Apco Oil Corp. Liquidating Trust*, 306 F. Supp. 2d 1040, 1101-1102 (D. Kan. 2003); *Yankee Gas Servs. v. UGI Utils., Inc.*, 852 F. Supp. 2d 229, 249 (D. Conn. 2012); *Lockheed Martin Corp.*, 35 F. Supp. 3d at 123.

-6-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

*See also, Farmland Indus. v. Colorado & E. R.R.*, 944 F. Supp. 1492, 1500-01 (D.Colo. 1996) (allocating 85% of the response costs to Colorado & Eastern, based in large part on its property value having increased by over $600,000 as a result of the cleanup).

At trial on the allocation issues, therefore, the parties will undoubtedly introduce evidence regarding, among other things:

- the total extent of the contamination at the Site (e.g. how far and at what concentrations across the Site different contaminants are found);
- the extent to which each party (including adjacent property owners and/or operators, and the Settling Defendants) is responsible for the presence of different contaminants and/or the spread of contaminants at the Site;
- the remediation measures undertaken and total amount of clean-up costs incurred, including the amount of such clean-up costs associated with each contaminant (including whether certain contaminants such as PCBs required more costly remediation efforts because of their toxicity);
- the responsibility of each party (including HACLA, adjacent property owners and/or operators, and the Settling Defendant) in causing the costs to be incurred; and
- the extent to which any party (most especially HACLA) benefited from the remediation work at the Site (e.g. by HACLA seeing the value of its property increased substantially through the work performed at the Site, and by HACLA completing steps for the purposes of development of the Site through the remediation process).

Each of these issues, however, will also go directly to the determination of whether the work HACLA has undertaken at the Site is "necessary" and consistent with the NCP, including for example:

- the total lateral and vertical extent of contamination found at the Site and the measures undertaken by HACLA to respond to that contamination;[6]
- the measures undertaken by HACLA to respond to each of the contaminants (including those such as PCBs, TPH, and naphthalene for which none of the Defendants have been held responsible);

---

[6] HACLA will need to prove that the measures taken at the Site were necessary to respond to the contamination, which will require HACLA to prove the extent of contamination and that measures taken were required to respond to that contamination. *See Carson Harbor, supra*, 270 F.3d at 870-71; *AmeriPride Servs., Inc., supra,* 782 F.3d at 489-90.

-7-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

- the total amount of clean-up costs and whether any of those costs were associated with measures undertaken to respond to contaminants for which the Defendants are not responsible;

- whether any of the clean-up costs would have been any less but for the actions of other parties (including the Settling Defendants who added to and spread the contaminants across the Site after the Defendants left the Site)[7]; and

- "the extent that actions are taken for purposes other than responding to an actual and real public health threat" (i.e. are not "necessary" – including measures taken during the remediation for the purposes of HACLA's redevelopment of the Site, not removing hazardous substances)[8].

It cannot be accurately said, therefore, that the determination of the issues related to allocation can be segregated from the determination of the issues regarding HACLA's total recoverable response costs.

### B.    Liability and Allocation Overlap with Total Claimed Damages in HACLA's State Law Claims

Based on the Court's existing orders, HACLA proposes that issues regarding "liability" (including each party's responsibility for HACLA's claimed damages) and the recoverable "damages" for HACLA's state law claims can also be bifurcated.  But based on the Court's existing orders and the Defendants' affirmative defenses, the remaining issues regarding liability and allocation of responsibility for HACLA's claimed nuisance and trespass damages will be directly impacted by the total claimed "damages" themselves and the proof of those damages.

As an initial matter, HACLA has the burden to prove to the jury that HACLA has suffered a *continuing* nuisance and/or trespass to overcome Defendants' statute of limitations defense.  *See McCoy v. Gustafson*, 180 Cal. App. 4th 56, 84-86, 108-110 (2009); *Mangini v Aerojet-General Corp.*, 12 Cal. 4th

---

[7]    Parties who spread contamination are responsible as PRPs.  *See Kaiser Aluminum & Chemical Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1341 (9th Cir. 1992) (party is a responsible as a PRP for grading activities that spread contamination and increased the cost of responding to contamination).

[8]    There is no CERCLA liability for costs HACLA may have incurred related to such actions.  *See G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995).

-8-

**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

1087, 1095-96 (1996); *Oildale Mutual Water Co. v. Crop Prod. Servs.*, 2014 WL 824958 * 5 (E.D.Ca. 2014).  HACLA must present evidence showing the contamination is capable of being abated at a *reasonable* cost and by *reasonable* means.  *Id.*  HACLA cannot do so without demonstrating the total cost and method of remediation.  *Id.*; *Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 15 Cal. App. 4th 583, 597 (2007) (question of permanent vs continuing trespass and nuisance is for the jury).  If the jury finds the contamination to be a permanent nuisance and/or trespass, the three-year statute of limitations will bar HACLA's nuisance and trespass claims all together, as HACLA has stipulated that the Defendants did not own or operate the Site after no later than 1979.  *Id.; Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal.3d 862, 868-69 (1985).  Thus, the jury will need to be informed of the total cost and method of remediation to establish *any* liability on the part of any of the Defendants.  *McCoy v. Gustafson*, 180 Cal. App. 4th at 84-86.

Further, as this Court noted, whether Defendants can be held liable for nuisance depends on the jury's determination on whether the seriousness of harm suffered by HACLA outweighs any social utility of Defendants' conduct.  (*See* Dkt. 849, p. 17.)  The jury needs to ascertain the total harm HACLA claims to have suffered.  Without that information, the jury will have nothing against which to balance the social utility of Defendant's conduct.

Further, as this Court noted, whether Defendants can be held liable for nuisance depends on the jury's determination on whether the seriousness of harm suffered by HACLA outweighs any social utility of Defendants' conduct.  (See Dkt. 849, p. 17.)  The jury needs to ascertain the total harm HACLA claims to have suffered.  Without that information, the jury will have nothing against which to balance the social utility of Defendant's conduct.

Likewise, in order to allocate responsibility for HACLA's damages under its nuisance and trespass claims, the jury will need to determine the proportional

responsibility of each party—including HACLA and the Settling Defendants. Thus, allocation of responsibility will necessarily depend on how HACLA's incurred costs relate to the various causes of those costs. The jury will need to consider evidence of what work was done to address different conditions at the Site, the total amount of money spent by HACLA to address those conditions, and lastly, what caused or contributed to the various conditions. For example, the jury will need to decide what portion of HACLA's incurred costs was the result of contaminants released or spread by Settling Defendants, and what portion of the incurred costs was caused by HACLA's voluntary and/or negligent actions in acquiring and developing the Site. The allocation of responsibility, therefore, will necessarily be dependent on how the costs incurred by HACLA relate to the causes of those costs, which is a determination that the jury cannot make until it is presented with evidence of the work done at the Site and the total amount of money spent by HACLA to address different conditions on the Site.

### C. Evidence Relating to Assumption Claims Also Overlaps with Evidence Relevant to Allocation Issues

The parties agree that the issues related to HACLA's assumption claims against GK Tech will need to be tried to the jury. (*See* Dkt. 875, § 13.a.).[9] These issues cannot be bifurcated from the trial of the issues related to HACLA's nuisance and trespass claims, therefore, without empaneling two separate juries – one to address the assumption claims and a second, for reasons set forth in § IV.B above, after HACLA's total amount of claimed remediation work and costs are known. The evidence relevant to those assumption claims, moreover, will overlap with the evidence that will be presented regarding allocation of liability to New Southwest, including specifically the nature of New Southwest's operations at the

---

[9] PCC Tech believes that a jury trial is also required as to any factual disputes regarding whether (i) any concerns were raised prior to October 1969 regarding operations of any of the Finkelstein Defendants causing soil contamination at the Site, or lead or arsenic contamination of any kind, and (ii) any liabilities related to any soil contamination, or lead or arsenic contamination of any kind, were reflected or reserved against in any of the Finkelstein Defendants' balance sheets.

Site, the extent to which those operations caused contamination to the Site, and the extent to which anyone was aware that those operations were causing or had caused contamination to the Site. It would be needlessly duplicative and inefficient to have these factual issues tried twice to two separate juries, and would needlessly run the risk of inconsistent verdicts from those two separate juries.

## V. ISSUES AFFECTED BY FACTS STILL BEING DEVELOPED

Even assuming no substantial overlapping issues between liability and damages recoverable by HACLA on those claims, bifurcating liability from damages will not save the current trial schedule because a number of questions going directly to liability, and specifically allocation of liability, are directly impacted by the facts that are still being developed on the ground. Even to the extent that those facts have already been developed (*e.g.*, the total costs spent by HACLA to date), only *some* of the evidence regarding those facts has been produced to the Defendants. This case will not be ready for trial until those facts are fully developed and the evidence regarding those facts is fully and fairly shared with the Defendants.

### A. Facts Still Being Developed

As HACLA has represented to the Court, after completion of the majority of the work called for in the IRAP, HACLA took additional "pothole" soil samples across the entire 21-acre Site and concluded that the contamination it wanted to address was far more widespread across the Site than contemplated by the IRAP. (*See* Dkt. 857 § 13.b.2; Dkt. 847-2.) As of the time of filing, however, none of the data regarding the additional soil samples taken by HACLA's contractors has been provided to the Defendants. (*See* Ehling Decl. ¶ 5.) Moreover, despite Defendants' requests, HACLA has yet to provide Defendants with essential information regarding the remediation work actually done to date at the Site, including: (i) sampling and analysis of the soil stockpiles created during the excavation work (including stockpile sample location maps, analytical results and

-11-
DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES

1  statistical analysis of the results received to accurately profile each stockpile of soil
2  excavated for disposal and/or re-use on-Site), and (ii) analytical reports and chain
3  of custody documentation for all waste characterization/profiling and confirmation
4  soil sampling during the primary IRAP implementation.  (*See id.* at ¶ 4.)  As a
5  result, the Defendants have not been able to conduct any follow-up discovery
6  regarding the work already performed at the Site, nor have Defendants' experts
7  been able to analyze and develop opinions regarding whether and to what extent
8  that work is "necessary" to address the contamination at the Site and/or is
9  consistent with the NCP.  (*See id.* at ¶ 6.)[10]

10  HACLA now reports that it will be *at least* the end of April 2016 before the
11  total costs to address that contamination are known.  (*See* Dkt. 847-2.)  Further,
12  HACLA's contractors have reportedly developed a plan to address the more
13  widespread contamination at the Site, which includes excavating and hauling off-
14  site the top 1 to 5 feet of soil across nearly the entire 21-acre Site.  (*See id.*)
15  Neither this plan, nor any of the communications between HACLA and the
16  Department of Toxic Substances Control ("DTSC") regarding this plan have been
17  produced to the Defendants.  (*See* Ehling Decl. ¶ 7.)

18  The fact that HACLA now believes contamination at the Site is far more
19  widespread than was previously reported fundamentally undermines the
20  sufficiency of the discovery conducted to date regarding the nature and extent of
21  contamination at the Site.  Defendants' experts believe, moreover, that the
22  "pothole" sampling conducted by HACLA's contractors is insufficient to

---

[10]  Discovery in this matter has been closed since January 16, 2015, so the Defendants have been unable to conduct any follow-up discovery regarding the work at the Site which began in April 2015.  Unless and until exposed to full and fair discovery, no new facts or evidence developed since the close of discovery should be admissible in this case.  *See* Fed.R.Civ.P. 26(e); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (noting that the failure to timely supplement disclosures upon new evidence will lead to exclusion of the evidence unless proponent can establish that the failure was harmless).  It is not relevant that HACLA may claim lack of bad faith or willfulness; evidence should be excluded unless a less drastic remedy (such as continuing the trial to allow appropriate discovery and for the opposing party to prepare for trial) is available.  *Id.*; *Castaic Lake Water Agency v. Whittaker Corp.*, 2002 WL 34700741 *11-13 (C.D. Cal. 2002) (discovery regarding evidence that arose after the discovery cut-off permitted to prevent prejudice to the opposing party).

-12-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES**

adequately characterize the nature and extent of the contamination actually present across the Site.  (*See* Bollier Decl. ¶¶ 14-16.)  In order to address those insufficiencies, on October 23, 2015, the Defendants served on HACLA a request pursuant to Federal Rule of Civil Procedure 34 to enter the Site and conduct their own rigorous, scientific sampling of the soils across the Site.  (*See* Ehling Decl. ¶ 8, Ex. C.)  This sampling is expected to take 4-5 weeks to complete once it commences.  (*Id*.)

      **B.**     **The Developing Facts Have a Direct Impact on Liability Issues**

The "new data" from the work done at the Site since April 2015, including the additional sampling conducted by HACLA's contractors, does not only raise questions about the likely total cost to complete the remediation work HACLA intends to undertake.  The "new data" fundamentally calls into question the sufficiency of the factual predicates underlying the opinions of each expert witness retained to address liability and allocation issues.

As explained by Defendants' expert John Bollier, all of the experts who have submitted opinions in this case—including specifically Plaintiff's causation expert Robert Kadlec and Plaintiff's allocation expert Philip Tringale, and Becker Brothers' rebuttal allocation expert, Christopher Loos—relied on the soil sampling data that pre-dated April 2015.  (*See* Bollier Decl. ¶¶ 12, 17.)  All of that sampling data showed there were no concentrations of the relevant chemicals of concern outside of the defined geographic limits of excavation set out in the IRAP.  (*See id.* at ¶ 6.)  If the report of the sampling results from the 126 "pothole" samples taken by HACLA's contractors is accurate, any conclusions regarding the nature and extent of the contamination at the Site drawn by all of the consultants to have looked at the Site are incomplete and/or inaccurate.[11]  Likewise, all of the experts

---

[11]    Based on the existing sampling data and defined geographic limits of remediation work in the IRAP, the parties' various experts estimated the costs to implement the IRAP to be between $5 million and $11.3 million.  (Dkt. 847-2 ¶ 5.)  If the report of the costs HACLA has incurred to date on implementing the IRAP are accurate, those estimates were anywhere from $1.7 million to $8 million off.

-13-
DEFENDANTS' SUPPLEMENTAL BRIEF RE BIFURCATION ISSUES

relied on estimates of the toxicity of the contaminants in the soil that HACLA's consultants apparently have since concluded were inaccurate. (*See* Dkt. 847-2 ¶ 7.b.) The "new data" generated since April 2015 could have a direct impact, therefore, on the experts' opinions regarding the source(s) of the lead and arsenic at the Site and the parties responsible for that lead and arsenic. (*See*, *e.g.*, Bollier Decl. ¶¶ 13-14.) In order to properly address liability and allocation issues, therefore, all parties in fairness need to have the opportunity to review, confirm, and assess the impact of this new data. *C.f. Perez v. First American Title Insurance Company*, 910 F. Supp. 2d 986, 989 (D. Ariz. 2011) (finding that where a party supplements disclosures after discovery cut-off based on later-developed evidence, in fairness opposing party should have a chance to respond with supplement to their own expert's opinion and producing party should have chance to depose opposing party's expert on supplemental opinion).

Moreover, without access to this "new data"—as confirmed and/or rebutted through discovery and by more rigorous sampling conducted by Defendants' experts—the Court will lack critical pieces of information that go directly to the application of the Gore and Torres factors for allocating liability here. As discussed above, the new data very well could go directly to the question of whether and to what extent it is possible to distinguish the parties' respective contributions to the contamination existing at the site. More directly, this new data will impact any assessment of the total amount of hazardous waste released or disposed of at the Site, as well as assessments of the degree of toxicity of that hazardous waste. Finally, without access to the complete record of communications between HACLA, its contractors, and the DTSC since the remediation efforts began in April 2015, there is a large gap in the record of how HACLA has cooperated with or perhaps overridden the recommendations of DTSC regarding the work at the Site.

In short, any trial on liability and allocation issues at this time will necessarily be based upon an incomplete and inaccurate factual record, which will likely have a direct impact on the ultimate assignment and allocation of liability here.

## VI. CONCLUSION

Based on all of the issues addressed above, the Defendants respectfully suggest that a bifurcation of liability and damages issues is not appropriate at this point and, moreover, that any effort to do so—*i.e.*, to try liability issues before all of the new facts and evidence developed at the Site have been subject to discovery—would unavoidably lead to a flawed trial on a meaningfully incomplete factual record.

Dated:  October 23, 2015         Respectfully Submitted,


By:   */s/ Dennis M. P. Ehling*
      Dennis M. P. Ehling
      BLANK ROME LLP
      Attorneys for Defendants
      PCC TECHNICAL INDUSTRIES, INC. and
      GK TECHNOLOGIES, INC.

Dated:  October 23, 2015         WALSWORTH FRANKLIN BEVINS & MCCALL LLP


By:   */s/ Sage R. Knauft*
        Sage R. Knauft
      Attorneys for Defendants
      **LESTER RUBEN CORPORATION NO. 1, LESTER RUBEN CORPORATION NO. 2, LESTER RUBEN CORPORATION NO. 3, FINKELSTEIN FOUNDATION, ESTATE OF LESTER M. FINKELSTEIN, DECEASED, AND ESTATE OF RUBEN FINKELSTEIN, DECEASED**

| | | |
|---|---|---|
| 1 | Dated: October 23, 2015 | GORDON REES SCULLY MANSUKHANI LLP |
| 2 | | |
| 3 | | By: /s/ *Brian M. Ledger* |
| 4 | | Brian M. Ledger<br>Attorney for Defendant |
| 5 | | **SOUTHWEST STEEL ROLLING MILLS. INC.** |